UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS RAY FETTERS, | : | |
| Plaintiff | : | No. 4:CV-06-1000 |
| vs. | : | (Complaint Filed 05/17/06) |
| | : | (Judge Muir) |
| OLGA BEREGOVSKAYA, et al., | : | |
| Defendants | : | |

**ORDER**

January 11, 2007

**BACKGROUND**

Plaintiff, Thomas Ray Fetter, an inmate formerly confined in the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[1] He complains that defendants have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (Doc. No. 1, complaint). Named as defendants in the complaint are Dr. Beregovskaya, SCI-Huntingdon Medical Director, and Prison Health Services, a private contract services health care

---

1. Plaintiff is currently confined in the Smithfield State Correctional Facility, Huntingdon, Pennsylvania.

provider.  Presently before the court is defendants' motion to dismiss the plaintiff's complaint. (Doc. No. 14).  The motion is fully briefed, and is ripe for disposition.  For the reasons set forth below, defendants' motion to dismiss will be granted.

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  Langford vs. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami vs. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action."  Id.  The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz vs. Sorema N.A., 534 U.S. 506, 514 (2002).  Consistent with these

principles, the court must grant leave to amend before dismissing a claim that is merely deficient. See Shane vs. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**Factual Allegations of Plaintiff's Complaint**

Plaintiff states that he suffers from "Hepatitis C, impaired liver function, IBS, and painful diverticular disease." (Doc. No. 1, complaint ). He claims while housed at SCI-Somerset from November, 2004 through February 2005, he was prescribed Tylenol #3 codeine, Motrin 400mg and Metamucil "which afforded plaintiff pain control and bowel function of a normal nature, without excessive diarrhea." Id.

In February, 2005, plaintiff was transferred to SCI-Huntingdon, where he came under the care of Dr. Beregovskaya. Id. Initially, Dr. Beregovskaya prescribed "Codeine Sulfate 30mg BID, Lomotil 25mg BID, and Metamucil to treat plaintiff's IBS, and painful diverticular disease." Id. Plaintiff states that "these medications controlled plaintiff's symptoms and pain and were ordered for plaintiff thru August 2005." Id.

On August 3, 2005, plaintiff had a verbal dispute with a prison guard. Id. Plaintiff states that the guard "threatened

3

to use his influence with medical to have plaintiff's pain control stopped, to 'learn him something'". Id.

On August 12, 2005, plaintiff claims that Dr. Beregovskaya came to see plaintiff in the RHU. Id. She told plaintiff that his pain medications would be reduced by 50% for thirty days and then discontinued, without giving any reason for doing so. Id. Plaintiff states that he was then prescribed Ultram, a substitute pain medication. Id. Plaintiff's other treatments and medications remained the same.

In October, 2005, Dr. Beregovskaya sent plaintiff to a hospital for a liver biopsy and started plaintiff on Interferon/Ribauarin therapy for plaintiff's Hepatitis C. Id. In December, 2005, Dr. Beregovskaya again sent plaintiff to a hospital for a CT scan of plaintiff's abdomen. Id. After each of these trips to the hospital, plaintiff states that he "complained to defendant, Dr. Beregovskaya about being in bad pain after defecation, which lasts for hours." Id. He claims that he "repeatedly told defendant, Dr. Beregovskaya that Ultram was not helping control his pain, and asked to be put back on codeine ordered by specialist, Allen Snyder, M.D., in November,

4

2004, or given an effective substitute" and that Dr. Beregovskaya "denied plaintiff each time." Id.

Plaintiff further claims that in December 2005, after returning from the hospital CT scan, plaintiff experienced a bursting sensation in his lower left abdomen, and started experiencing frequent and painful urination, as well as a dry mouth, which symptoms he claims continue to the present. Id. Plaintiff also states that beginning in late February, 2006, and continuing to the present, he experiences pain and swelling in his feet and legs after lying in bed for any period of time. Id. Finally, he claims that since late March, 2006, he has been experiencing constant pain in his calves. Id.

After exhausting his administrative remedies, plaintiff filed the instant action in which he seeks compensatory and punitive damages for defendants' deliberate indifference to plaintiff's medical needs; specifically Dr. Beregovskaya's "denial of established prescribed medication by specialist Allen Snyder, M.D.". Plaintiff also seeks "a preliminary and permanent injunction, ordering defendant Olga Beregovskaya, M.D., to order plaintiff pain control for his conditions [that was] previously ordered by specialist Allen Snyder, M.D., and by

5

Dr. Beregovskaya herself," as well as to be "seen by a pain control specialist, third party, on a recurring basis." Id.[2]

**Discussion**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States.

---

2. The Court notes that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel vs. Thompson, 415 U.S. 452, 459 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg vs. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea vs. Littleton, 414 U.S. 488, 495-96 (1974)).

Furthermore, "[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl vs. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter vs. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992). The instant plaintiff is no longer confined at SCI-Huntingdon, and there is no reasonable probability that he will be returned to that correctional facility in the foreseeable future. Consequently, since plaintiff is not suffering any apparent continuing adverse effects as a result of his prior confinement at SCI-Huntingdon, his requests for injunctive and declaratory relief are moot under the standards set forth in Rosenberg and Wahl.

See 42 U.S.C. § 1983; see also West vs. Atkins, 487 U.S. 42, 48 (1988). A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights. See Monell vs. Dep't of Social Serv., 436 U.S. 658, 694-95 (1978); Gay vs. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode vs. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson vs. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003).

Plaintiff's complaint against defendant, Prison Health Services, suffers from a lack of alleged personal involvement in the events at issue. Aside from naming Prison Health Services as a defendant, the complaint is devoid of any allegation of personal involvement by this defendant. Thus, in the absence of any allegations of direct involvement by Prison Health Services in the alleged improper care of plaintiff, the complaint fails to state a claim against this defendant and the court will dismiss this defendant from the action. The allegations against Dr. Beregovskaya, in contrast, clearly assert personal involvement in plaintiff's medical treatment.

7

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse vs. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)(<u>citing</u> Estelle vs. Gamble, 429 U.S. 97 (1976)). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. <u>See</u> Spruill vs. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale vs. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element). Farmer vs. Brennan, 511 U.S. 825 (1994); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West vs. Keve, 571 F.2d 158, 161 (3d Cir. 1979). Because only egregious acts or omissions can violate this standard, mere medical malpractice can not result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. White vs. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

8

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle vs. Gamble, 429 U.S. 97, 106, (1976). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown vs. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer vs. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer vs. Carlson, 685 F. Supp. 1335, 1339

(M.D. Pa. 1988).  <u>See</u> McCracken vs. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart vs. Villar, 547 F.2d 112, 113 (10th Cir. 1976), <u>cert</u>. <u>denied</u>, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little vs. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer vs. Carlson, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, <u>i.e.</u>, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson vs. McMillian, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson vs. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347; Ramos vs. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), <u>cert. denied</u>, 450 U.S.

10

1041 (1981); West vs. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. <u>See</u> Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347; Archer vs. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro vs. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

Plaintiff's complaint clearly reveals that the plaintiff's medical needs were attended to while he housed at SCI-Huntingdon. At best, plaintiff's complaint demonstrates plaintiff's disagreement with Dr. Beregovskaya's choice of prescribing Ultram over plaintiff's choice of Codeine. However, plaintiff's reliance upon a prior prescription of his preferred pain reliever by another physician, or the prior prescription of different pain relievers by Dr. Beregovskaya at an earlier time, does not serve as a predicate to liability under § 1983. <u>See</u>, White vs. Napoleon, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail vs. Pierce, 612

F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another).  This is particularly so in light of the fact that there are no allegations in the complaint that Dr. Beregovskaya intentionally withheld plaintiff's preferred pain reliever in order to inflict pain or harm upon plaintiff. Farmer; Rouse.[3]

---

3. To the extent that plaintiff may be attempting to claim that his pain medication was reduced as a result of a conspiracy between Dr. Beregovskaya and the prison guard plaintiff allegedly had a dispute with, the complaint fails to set forth a viable conspiracy claim.  In setting forth a claim of conspiracy, a plaintiff can not rely on broad or conclusory allegations.  Dennis vs. Sparks, 449 U.S. 24, 27-36 (1980). On the contrary, he must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  Chicarelli vs. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).
    Plaintiff, nowhere alleges any facts supporting a plan or agreement between Dr. Beregovskaya and the prison guard, who is not a named defendant, to conspire or engage in a corrupt plot to violate plaintiff's civil rights.  The court therefore rejects plaintiff's factual contentions as clearly baseless. See Young vs. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (conspiracy claims which are based upon pro se plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)).  The allegations in the complaint are vague and conclusory and do not present a cognizable § 1983 conspiracy claim.

12

Thus, the allegations contained within the complaint establish meaningful efforts by Dr. Beregovskaya to provide plaintiff with necessary medical care, and an attendant mental state that falls woefully short of deliberate indifference. Indeed, plaintiff's allegations of the scope and quality of medical attention that Dr. Beregovskaya provided precludes a finding of deliberate indifference on behalf of this defendant.

Finally, plaintiff claims that he is "a PTSD and chronically ill disabled U.S. Service Veteran and falls under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq." and that in Yeskey v. Pennsylvania Department of Corrections, 524 U.S. 206, 210 (1998), the United States Supreme Court held that ADA claims are applicable to inmates.

Title II, 42 U.S.C. § 12132 provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." Individual defendants, however, are not public entities within the meaning of Title II of the ADA and are, therefore, not subject to suit. Emerson vs. Thiel College, 296 F.3d 184, 189 (3d Cir.

13

2002)(Individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); Wesley vs. Vaughn, 2003 U.S. Dist. LEXIS 4434 (E.D. Pa. 2003)(Prison supervisors could not be made defendants in their individual capacities in a lawsuit in which plaintiff, a prisoner, alleged the individuals failed to accommodate plaintiff's need to avoid second hand smoke.)

Further, Prison Health Services is not a public entity within the meaning of Title II of the ADA and so is also not subject to suit. Nor does plaintiff allege that Public Health Services is a public entity for purposes of the ADA claim. Thus, the plaintiff's complaint fails to state a cognizable ADA claim against either Dr. Beregovskaya or Prison Health Services.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss the plaintiff's complaint (Doc. No. 14) is **GRANTED** as set forth in paragraph 3 below.

2. Plaintiff's motion for temporary restraining order (Doc. No. 11) is **DISMISSED** as moot.

3. The Plaintiff's complaint is dismissed with leave to file an amended complaint within 20 days of the date hereof.

4. If Plaintiff fails to file an amended complaint in accordance with paragraph 3 of this order the Clerk of Court is directed to **CLOSE** this case without further order of court.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

s/Malcolm Muir
MUIR
United States District Judge
